[Civ. No. 1834.  Third Appellate District.—June 13, 1918.]

## MARY ISABELLE BUICK et al., Respondents, v. BENJAMIN F. BOYD, Appellant.

ACTION TO REFORM CONTRACT — SETTLEMENT OF PROPERTY RIGHTS OF MARRIED PERSONS—DECREE IN DIVORCE ACTION NOT RES JUDICATA.— Where in an action for divorce the husband and wife adjust their property rights without the intervention of the court pending the action, the decree determining that the property be awarded to the respective parties in accordance with their agreement is not *res adjudicata* so as to bar an action by the wife to reform the description of certain real property contained in the agreement.

APPEAL from a judgment of the Superior Court of Shasta County.  James G. Estep, Judge.

The facts are stated in the opinion of the court.

Braynard & Kimball, for Appellant.

Orr M. Chenowith, for Respondents.

CHIPMAN, P. J.—Defendant Benjamin F. Boyd appeals from a judgment reforming the description of real property in a written contract.

Plaintiff Mary Isabelle Buick was formerly Mary Isabelle Boyd, wife of defendant Benjamin F. Boyd, and the mother of plaintiffs Alfreida Elinor and Malcolm Glenn Boyd, infant children of the marriage. Defendants Eugene Boyd and Edna Boyd are also children of the said marriage and are made defendants because their consent to be joined as plaintiffs could not be obtained and because united in interest with plaintiffs. Plaintiff John H. Buick is joined with plaintiff Mary Isabelle Buick, being her husband at the commencement of the action.

On February 11, 1909, plaintiff Mary Isabelle Buick, then Mary Isabelle Boyd, commenced an action for a divorce in the superior court of Shasta County on the ground of extreme cruelty. Pending the action, on March 4, 1909, she and her then husband entered into a written agreement settling their property rights, her claims for alimony, counsel fees and

costs. Final decree in the action was granted the plaintiff May 3, 1910.

The concluding paragraph of the interlocutory decree reads as follows: "And it further appearing that the rights of the respective parties in and to the property described in said complaint have been equitably adjusted by an agreement between the parties, it is determined that the said property be awarded to the respective parties in accordance with said agreement, dated the fourth day of March, A. D. 1909."

This agreement was intended to make disposition of all the property which either of the parties claimed to own, some belonging to each being separate property and some the property of the community. It not only purports to adjust all claims to property, but it adjusts all matters of alimony, counsel fees, and the support and maintenance of the minor children. Reciting the pendency of the action, it declares that "the parties hereto are desirous of settling said dispute of claims to the property in controversy and withdrawing the same from the consideration of the court, and whereas, the parties hereto are desirous of making provision for the support of the said minor children and for the son and daughter of the party of the first part herein (Benjamin F. Boyd), Eugene Boyd and Edna Boyd, Now, therefore, it is hereby mutually covenanted," etc. The contract then awards to the second party (Mrs. Boyd) the ownership and possession of the homestead (describing the lot) theretofore declared. "Also a certain tract of land adjoining said lot, piece or parcel of land being the W½ of the NW ¼ of the NE ¼ and the NE ¼ of the NW ¼ of the NW ¼ of Section 11, Township 30 North, Range 7 West; also the water ditch and water right belonging to said premises" (describing the ditch). The alleged mistake was in the call "NE ¼ of NW ¼ of NW¼, Section 11," which should have read "NE¼ of NW ¼, Section 11." It is further provided that second party "may continue to own, hold, occupy, possess and use [a certain lot in the town of Redding, describing it, and declared by the agreement to be her separate property], to have and hold the same, together with the rents, . . . during her lifetime or so long as she shall remain single and unmarried, for the better maintenance, support, care and education of herself and the two said minor children," and to go to said four children, Eugene, Edna, Alfreida, and Malcolm, should she

remarry. Then follows a clause by which the first party
"does hereby grant all of his right, title and interest in and
to said land and premises unto the said party of the second
part to her use and to the use of said four children, . . .
upon the conditions mentioned herein." Certain livestock,
the separate property of second party, "shall continue
to be and remain the property of the party of the second
part herein as her separate and individual estate; and in con-
sideration of the waiver of her right to alimony, the said party
of the first part hereby agrees to pay to the said party of the
second part the sum of $53.50 for costs and attorney's fees
herein." It is then provided that certain real property (de-
scribing it) "shall continue to be and remain" the separate
property of first party. Follows also a provision that in con-
sideration of the grant to her as provided in the agreement,
the second party "waives any claim for maintenance and sup-
port against the party of the first part, and hereby waives any
right or title in and to any of the property of the party of
the first part, except as expressed in this agreement." The
instrument was duly acknowledged by the parties on the day
of its date before Francis Carr, a justice of the peace in and
for Redding Township, Shasta County.

By appropriate averments in his answer, appellant claims
"that plaintiffs are and each of them is precluded or estopped
from suing upon the alleged cause of action set forth in said
amended complaint herein for the following reasons"; that
the said court, on May 3, 1910, "made and rendered its final
decree of divorce" dissolving the marriage which had thereto-
fore existed between said Mary Isabelle and Benjamin F.
Boyd, and "that no motion for a new trial was made or appeal
taken from said final decree and said decree is now in full
force and effect"; that said written agreement "was and now
is merged in the said final judgment of divorce and the said
plaintiffs in the above entitled action are and each of them is
precluded or estopped from suing upon the alleged cause of
action set forth in the said amended complaint."

Appellant's contention is stated as follows: "The title to
the property involved having been adjudicated in the divorce
action, the final decree of divorce is *res adjudicata* and is a
bar to the present action."

The court found as facts, among others: "That the said
plaintiff and the said defendant intended to set forth and de-

scribe in said agreement the west half of the northwest quar-
ter of the northeast quarter, and the northeast quarter of the
northwest quarter of section 11, township 30 north, range 7
west, M. D. M., in the county of Shasta, state of California,
but by mutual mistake in drawing and writing said agree-
ment, said property intended to be described was incorrectly
and by mistake described by the persons employed to draft
and write said agreement, as the west half of the northwest
quarter of the northeast quarter, and the northeast quarter of
the northwest quarter of the northwest quarter, of section 11,
township 30 north, range 7 west, M. D. M.; that said mistake
in description was and is a clerical mistake made in writing
and drafting said agreement. . . . That said mistake was not
discovered by plaintiff, Mary Isabelle Buick, formerly Mary
Isabelle Boyd, until the month of June, 1912, in the following
manner: That on or about December, 1910, plaintiff, Mary
Isabelle Buick, formerly Mary Isabelle Boyd, rented the real
property described in said declaration of homestead, which in-
cluded the west half of the northwest quarter of the northeast
quarter, and the northeast quarter of the northwest quarter
of section 11, township 30 north, range 7 west, M. D. M., in the
county of Shasta, state of California, to one W. W. Sublett,
and the said W. W. Sublett thereafter paid rent for the same
to said plaintiff; that in the month of June, 1912, the said de-
fendant, Benjamin F. Boyd, notified the said W. W. Sublett
that he, the said defendant, was entitled to the rent for the
said northeast quarter of the northwest quarter of said section
11; that said W. W. Sublett immediately thereafter informed
said plaintiff that said defendant claimed the rent for the said
northeast quarter of the northwest quarter of said section 11,
and claimed title to the same; that immediately thereafter said
plaintiff examined said agreement, and discovered that the
mistake in description hereinabove set forth had been made in
said agreement. That prior to the said month of June, 1912,
said plaintiff was not aware, and had no knowledge, that the
aforesaid mistake in description had been made in said agree-
ment.''

It is not seriously contended that the evidence was insuffi-
cient to support these findings. If there was any evidence to
the contrary, it was appellant's duty to point it out in his
brief, which he has not done. (Code Civ. Proc., sec. 953c.)

We have read the record of the evidence and find it amply sufficient to sustain the findings.

It appeared that the parcel of land misdescribed did not, when the agreement was entered into, belong to either of the parties, while the parcel which the court found was intended to be described was a part of the homestead declared by defendant in 1902, while the northwest quarter of the northwest quarter of said section, which included the misdescribed parcel awarded to defendant, was deeded to him by the Central Pacific Railroad Company in July, 1909. The evidence showed that the intention of the parties was that the property described in the homestead should go to plaintiff in the divorce action.

The only controverted question in the case is presented in appellant's proposition above quoted.

The rule, as stated in the Code of Civil Procedure, section 1911, is as follows: "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." It was competent for the parties in the divorce action to adjust their property rights without the intervention of the court, and in doing so they expressly declared their object to be the settlement of "disputed claims to the property in controversy and withdrawing the same from the consideration of the court." The court in its decree determined nothing more than that the "property be awarded to the respective parties in accordance with said agreement." There was no longer any issue as to the property, nor was it necessary for the court to make any determination of the matter. The action of the court did not, in our opinion, amount to such an adjudication as is contemplated by the statute, nor did it constitute a bar to the present action. It added nothing to the validity or force of the agreement. There were in fact but two questions remaining for the court to determine, to wit, whether plaintiff was entitled to the decree of divorce and to whom the custody of the minor children should be awarded. "A former verdict is conclusive only as to facts directly and distinctly put in issue and the finding on which is necessary to uphold the judgment." (1 Freeman on Judgments, sec. 257.) Where the record on its face shows that an issue before the court was withdrawn from consideration, the presumption that it was adjudicated no

longer applies. (*Coburn* v. *Goodall,* 72 Cal. 498, 506, [1 Am.
St. Rep. 75, 14 Pac. 190].) If a question is not in issue, it is
immaterial that it is passed upon in the opinion of the court
rendering the judgment. (15 R. C. L., p. 919.)

That the court and the parties treated the agreement as
withdrawing the property rights from the court is shown by
the fact that the agreement disposed of certain cattle to the
plaintiff in the action and certain real property to the defend-
ant of which no mention is made in the decree. This issue of
property rights having been withdrawn, the present action
cannot fairly be said to be an attack upon the judgment of
divorce. "The rule undoubtedly is," as said by Mr. Justice
Lorigan in *Southern Pacific Co.* v. *Edmunds,* 168 Cal. 415,
418, [143 Pac. 597, 598], "that a former judgment between
the parties to an action is conclusive in all subsequent actions
involving the same question, not only as to the matters actually
decided in the former controversy, but as to all matters be-
longing to the subject of the controversy and properly within
the scope of the issues which also might have been raised and
determined." But as to matters which might have been liti-
gated and decided as within the scope of a former suit, but
which were not actually or expressly in issue and adjudi-
cated, the learned justice said: "Only a presumption is in-
dulged in that they were decided. This presumption is, how-
ever, a disputable one and may be overcome by showing that
although a particular matter was involved in the former ac-
tion, it was by consent of the parties withdrawn from consid-
eration at the trial and did not at all enter into or constitute
any part of the verdict of the jury or final determination of
that action." In point of fact, and it so appears from the
face of the record, the property described in the complaint in
the divorce action, and in the agreement and referred to in the
decree did not include the parcel now involved, and the dis-
position of the latter was, therefore, not an issue in the origi-
nal action, and on the face of the record, the judgment would
appear not to be a bar, for there was no adjudication as to it.
If the rule be invoked that this parcel was a matter "belong-
ing to the subject of the controversy and properly within the
scope of the issues which also might have been raised and de-
termined," the answer is that neither party discovered the
mistake in the description of the property, and both parties

by mutual mistake assumed the description to be correct. The present action is different from the original action, and the rule is that in such case the judgment in the first action operates as an estoppel only as to those matters actually litigated and determined and not as to matters which might have been litigated. In *Freeman* v. *Barnum,* 131 Cal. 386, 389, [82 Am. St. Rep. 355, 63 Pac. 691, 692], Mr. Justice Temple stated the rule to be that "if the point or matter of fact has by them [the parties] or. those to whom they are privy in estate been once distinctly put in issue and solemnly found against them, they are precluded from contending to the contrary. But this estoppel in actions upon a different cause of action only extends to matters actually litigated and determined, and not to questions involved and defenses which might have been but were not made." In the case of *More* v. *More,* 133 Cal. 489, [65 Pac. 1044, 66 Pac. 76], plaintiff Wallace More executed a deed purporting to convey to Thos. More all the interest of the former in the estate of A. P. More, deceased, and he also addressed a letter to the judge sitting in probate and to the administrator of said estate authorizing the distribution of said interest to said grantee. Accordingly, the court determined the rights of the parties under section 1664 of the Code of Civil Procedure. The suit was brought to annul the deed from Wallace to Thomas More. The judgment in the superior court was pleaded as an estoppel. Said the court: "Assuming the court to have jurisdiction, its judgment would be conclusive only as to the matter actually litigated. (Citing cases.) In the case at bar the matter now involved was not before the court." (Fraud in obtaining the deed from Wallace More was the issue.) "The judgment was entered on the written order or stipulation of Wallace More, obtained along with the deed of April 27, 1894, and tainted with the same fraud. It added nothing to the force of that document and the accompanying deed. Hence it is immaterial whether the court had or had not jurisdiction to determine the questions now under consideration. It is sufficient that those questions were not submitted to it." We can see no reason why the rule should not apply in a case of mutual mistake as well as where the issue is fraud. Relief in both cases addresses itself to the equity side of the court. It is very clear that in the present case the question of the alleged mistake was not before the court in the divorce action and was not litigated. Speak-

ing of the identity of causes of action, Mr. Freeman says: "The cause is the same when the same evidence will support both actions or rather, the judgment in the former action will be a bar, provided the evidence necessary to sustain the judgment for plaintiff in the present action would have authorized a judgment for him in the former." (Freeman on Judgments, sec. 257.) Had the evidence of the mistake been before the court, or had it been known when the agreement was made, it is quite clear that a correct description of the land would have found its way into both the decree and the agreement. It would, to our minds, work a miscarriage of justice to allow the rule of *res adjudicata* to step in here and defeat the action. Neither the facts nor the exigencies of the case would justify the court in permitting this to be done.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.