[Civ. No. 13400.  First Dist., Div. One.  Nov. 25, 1947.]

CLARENCE LAGARES et al., Plaintiffs and Respondents, v. GEORGE KAPPAS, Appellant; XENOFON KOU-KIS, Defendant and Respondent.

Jos. T. O'Connor, M. L. Choynski and J. Bruce Fratis for Appellant.

Wm. E. Ferriter, James C. Purcell and William Petros for Plaintiffs and Respondents.

Walter E. Dorn for Defendant and Respondent.

FINLEY, J. pro tem.—This action was brought to dissolve a partnership and compel an accounting. The appeal is by defendant George Kappas from certain portions of the judgment rendered in favor of plaintiffs Clarence Lagares and Irene Lagares against said defendant on their complaint, and in favor of defendant Xenofon Koukis against said co-defendant George Kappas on a cross-complaint filed by Koukis at the time of trial.

On January 1, 1945, appellant Kappas and one Thomas Lagares were equal partners in the operation of a food market at 1647-1649 Market Street in San Francisco. This will be referred to as the old partnership. Shortly after January 1, 1945, Thomas Lagares died. On October 1, 1945, a new partnership was formed under written articles naming Irene Lagares, Clarence Lagares, Xenofon Koukis and George Kappas as equal partners. The articles specified that each of the new partners had contributed an undivided one-fourth interest in the *capital stock* of the copartnership consisting of merchandise and equipment. What actually happened was that Irene Lagares, the widow of Thomas Lagares, and Clarence Lagares, her son, jointly took over the interest formerly owned by Thomas Lagares. George Kappas sold

Xenofon Koukis' one-half of the Kappas' one-half interest for $2,500.

The articles of copartnership set forth the rights and duties of the four copartners in some detail. Kappas was designated manager and it was specified that he should do all of the buying and fixing of prices. The hours of work were set forth for each partner, with the exception of Irene Lagares who, it was specified, should "cause to be employed some person to take her place in the store." Also "That the manager of said business, as hereinafter named, will employ a clerk to work in said business for the same number of hours that the other copartners work in said business and that the wages paid for such clerk shall be deducted from the net amount of the income of IRENE LAGARES' interest which is derived from said business, and in all other respects said Irene Lagares will receive an equal amount with each of the other copartners."

The following two paragraphs set forth the manner in which the bookkeeping was to be done and the books handled: "IT IS FURTHER AGREED that during the continuance of this copartnership there shall be kept perfect, true and just books of account, where each of said copartners shall enter or set down, or cause to be entered or set down all money by them received, paid out or disbursed in and about said business, as well as all goods or stock bought by them or either of them by reason or on account of said business. In all other matters and things whatsoever connected with said business and the management thereof or in any wise belonging, said books shall be used in common between said copartners, so that any of them may have access thereto without the interruption or hinderance of the other.

"Neither of said copartners shall have the right to remove any of said books of account from the premises, #1647-49 Market Street, in the City and County of San Francisco, or to such other address as the business may be thereafter removed, without the consent of the other copartners, and the said copartners shall during the continuance of the co-partnership as aforesaid, to-wit: on the first day of each and every month thereof, or sooner if necessary, make and render each to the other a true, just and perfectly accurate account of all of the profits or increases by them or either of them made, as well as the losses by them or any of them made or sustained, and also of all payments, receipts and

disbursements and all other things received, disbursed or entered in said business, and the said accounts being so made, they shall and will, each to the other, allow a just and equal share of the profits thereof.''

On January 15, 1946, respondents Irene and Clarence Lagares filed their complaint herein asking for dissolution of the partnership, for an accounting and also that a receiver be appointed. The complaint alleged that defendants Kappas and Koukis, by their conduct, had impaired the business of the partnership; that they diminshed the assets of the business; that by reason thereof the business of the partnership would be ruined; that plaintiffs had repeatedly requested said defendants to account for all moneys taken in and paid out by the business and to cease appropriating property of the partnership to their own use, but they refused to account to plaintiffs or to cease appropriating partnership property.

On February 14, 1946, the trial court made an order wherein it was found that plaintiffs were entitled to an audit of the books and records of the partnership and appointing auditors to perform that service. On March 19, 1946, the auditors appointed submitted to the court a report wherein it was stated that because of the inadequacy of accounting methods of the partnership it would be impractical to proceed with an audit or certify the proper amount of income and expenses of the business. The court thereafter on April 9, 1946, pursuant to stipulation and agreement among the parties made its order appointing a commissioner to sell the business, and on April 30, 1946, it was sold to appellant Kappas for $14,000. From this amount the commissioner paid the expenses of sale and certain obligations of the business, leaving a net balance of $11,712.07.

After trial the court entered a judgment (a) directing an equal division of the net proceeds of the sale to each of the four partners, (b) in favor of respondent Irene Lagares and against appellant Kappas for $2,708.49 as ''undistributed profits'' of the former partnership between Thomas Lagares and appellant Kappas, and (c) against appellant Kappas and in favor of the other partners (all respondents) for undistributed profits of the so-called ''new partnership'' in the following amounts: To Irene Lagares, $1,934; to Clarence Lagares, $450, and to Xenofon Koukis, $450.

As stated by appellant in his brief ''The judgment in favor of plaintiff Irene Lagares and against defendant Kappas for 'undistributed profits' of the prior partnership was

based on the . . . [finding] that there was $5,416.98 left in the bank by the 'Old Partnership' when it was dissolved, and this balance was 'checked out' by the 'New Partnership.' One of the contentions in this appeal is that this money was not 'undistributed profits' of the old partnership, but was intended to be used, and was used by the new partnership to pay outstanding obligations of the 'Old Partnership.'

"[That] The judgment against defendant and cross defendant Kappas and in favor of plaintiffs Clarence and Irene Lagares and cross-complainant Xenofon Koukis (as to $450.00 each) was based on evidence that the receipts of the business exceeded $10,000 per month, gross, and no distribution of profits was made by Kappas for certain months. It is contended in this appeal that the uncontradicted evidence shows that the cash receipts of the business (less cash pay-outs for merchandise) were deposited in the bank; that bills were paid by checks signed by two partners; that the balance remaining in the bank (after payment of bills) was distributed to the partners equally. Further, that no distribution of profits was made during some months solely because the bills for merchandise were received and paid during those months, and the 'profits' paid out in the other months were correspondingly greater. In other words that the inventory of the business fluctuated, which fluctuation made the payment of 'profits' vary from month to month.

"[That] The judgment in favor of Irene Lagares and against defendant Kappas for $1,934.00 included the $450.00 (above explained) and $1,484.00 for withdrawals due to her because the other partners had been given such a withdrawal, and she was not. While it is conceded that the other partners received $1,484.00 as withdrawals in January, February and March, 1946, it is contended that Irene Lagares was not entitled to the full amount because she was to be charged with the expense of a clerk hired to work in her place. . . . It is further contended that when the money payable to Irene Lagares was not paid, it remained in the partnership account, and the partnership account, together with the other assets of the partnership, were divided equally between the partners by the Court commissioner, under the authority of the judgment entered herein.

"[That] The appellant did not appeal from that portion of the judgment which directed that the net proceeds of the

sale of the partnership ($11,712.07) be divided equally between the four partners . . ., and [the evidence shows] this portion of the judgment has already been executed.

"[That] The appellant, however, does appeal [1] from those portions of the judgment which ordered him to pay to Irene Lagares the sum of $2,708.49 (plus interest) as undistributed profits of the 'old partnership'; [2] to pay to Irene Lagares $1,934.00 (plus interest) as undistributed profits of the 'new partnership' and [3] to pay to plaintiff Clarence Lagares and to cross-complainant Xenofon Koukis the sum of $450.00 each as undistributed profits of the 'new partnership.' "

Referring to portion (1) appealed from, appellant urges two grounds for reversal. The first is that this action was brought to dissolve the new partnership and to compel an accounting in connection therewith and that the trial court erred in admitting evidence, making findings and entering a portion of the judgment thereon where said evidence and finding dealt only with the affairs of the old partnership and should therefore not have been considered as an issue in this case. The second ground urged is that respondent Irene Lagares appears in this action as an individual, as a member only of the new partnership and not in any sense as a member of the old or as a legal representative of her deceased husband's estate and that she, therefore, was without legal capacity to demand or receive judgment for profits therefrom in her individual capacity.

In view of the peculiar facts of this case we doubt the application here of the first reason urged for reversal. It is a practical rather than a legal consideration. The bank account of the old partnership was apparently just transferred to the names of the new partners and carried on. The balance was carried over and commingled with the funds of the new partnership. Furthermore, it was apparently paid out on checks of the new partnership. We fail to see how under these circumstances any accounting of the books and accounts of the new partnership could have been accomplished without reference to this old balance. Certainly, the trial court did not err in admitting such evidence under these conditions.

As to the second ground, we must agree with appellant on the law. The death of a partner works a dissolution of that particular partnership. (Civ. Code, § 2425, subd. 4.) Furthermore, upon death his right in specific partner-

ship property vests in the surviving partner or partners. (Civ. Code, § 2419, subd. (d).) The duty of the surviving partner or partners is to wind up the affairs of that particular partnership and account to the estate of the deceased partner for his interest. (Prob. Code, § 571.)

Irene Lagares does not appear in this action as a legal representative of her deceased husband's estate: there is no evidence in the record that she is such, and the statement to the contrary appearing in the findings of the trial court finds support only in a statement to that effect made by counsel for respondent Irene Lagares. Furthermore, there is no evidence that she has received distribution through court order of any portion of her deceased husband's estate.

Assuming the $5,416.98 left in the bank by the old partnership to be, as the trial court found, undistributed profits it would be no defense to an action brought against appellant by the estate of Thomas Lagares in behalf of creditors or parties in interest other than Irene Lagares, his widow, to plead a judgment in the present case awarding his share of those profits to his said widow in her individual capacity. We note in passing that while appellant questions her right to judgment against him for her deceased husband's share in undistributed profits he apparently did not question her right to assume control over her deceased husband's partnership interest in the store, stock and fixtures and in fact recognized such an interest in the written articles of the new copartnership.

However that may be, that portion of the judgment awarding Irene Legares in her individual capacity the $2,708.49, which represents a one-half interest in the balance left in the bank by the old partnership, must be reversed, for we do not consider that any modification as to parties would be practical here. The question as to whether the funds left in the bank by the old partnership were actually undivided profits or funds being held for use in paying the old partnership obligations, seems sufficiently obscure to require further inquiry, which can be better accomplished by another action between the proper parties for that purpose. The reversal of this part of the judgment herein is not in any sense to be considered or construed a bar to such an action should, perchance, such a point arise in any future litigation.

In connection with this point appellant also urges that the trial court abused its discretion in refusing to reopen the

case so that he might introduce evidence to show that the $5,416.98 and more was paid out by him on obligations owing by the old partnership. By reason of the reversal of that portion of the judgment on the ground just stated, it becomes unnecessary to pass on this point.

Appellant's objections to that portion of the findings and judgment awarding Irene Lagares $1,934, Clarence Lagares $450, and Xenofon Koukis $450 as undistributed profits of the new partnership, is attacked on three grounds. First, that it is unsupported by the evidence; second, that any profits remaining undivided among the partners at the time the business and assets were taken over by the commissioner appointed by the court, were divided by said commissioner along with the proceeds from sale of the business and are included in the amounts set forth in that part of the findings and judgment not appealed from, and third, that judgment in favor of said Irene Lagares for the $1,484, Clarence Lagares for $450 and Xenofon Koukis for $450 representing their respective shares of the undistributed profits of the new partnership should not have been against appellant Kappas alone since the obligation was one "solely against the partnership."

The evidence as a whole is so unsatisfactory, and particularly that stemming from appellant, that a good deal would have to be assumed in differing with the findings of the trial court on any issue pertaining to the accounting. For all practical purposes appellant was the sole defendant. At the trial the other three partners leveled charges of wrongdoing at appellant but not at each other, and still, as far as can be determined from the record, he produced no very satisfactory or intelligent evidence in his own defense. His stock answers to practically all questions directed to the matters at issue were "whatever is in the book," or words to that effect, or that he couldn't remember or didn't know. The evidence did show that, whatever may have been the agreement between the partners as set forth in the articles, appellant hired and directed the bookkeeper, wrote the checks, did the banking and in general kept the records, such as they were, and the finances of the business pretty much under his own control. He disclosed but little information concerning the financial condition to the other partners. Under these circumstances if appellant saw fit to withhold evidence or failed to produce evidence necessary to refute the claims of the other partners, he should not be heard on appeal to com-

plain of inferences adverse to him drawn by the trial court and based on evidence which we cannot hold to be legally insufficient. It is true that the amount found by the trial court to be owing to Irene Lagares as her share of the undistributed profits of the new partnership apparently equaled the total amount paid to respondents Clarence Lagares and Xenofon Koukis without deductions for clerk hire, but it also appears from the testimony of appellant himself that he drew checks to Irene Lagares totaling the amount awarded to her by the trial court as undistributed profits but did not deliver the checks to her. Why did he draw these checks for such amounts? If the finding made by the trial court that these amounts were actually owing to Irene Lagares is based upon any legitimate inference which might reasonably be drawn from the evidence, the finding must be sustained. (*Tobola* v. *Wholey,* 75 Cal.App.2d 351 [170 P.2d 952].) We cannot say that the trial court was wrong in the inference drawn. The fact alone that the checks were drawn by appellant in amounts totaling the award of the court would in itself support the finding if the trial court chose to disbelieve any offered explanation as to why the checks were not delivered.

The fallacy of appellant's claim that the undistributed profits of the business were taken over by the commissioner and divided, along with the proceeds of sale of the market is obvious from simple mathematical computation taking the undisputed figures from that portion of the judgment not involved in this appeal. It is uncontradicted that the commissioner appointed by the court sold the market to appellant for $14,000 and after paying the expenses of sale and certain obligations divided the net balance of $11,712.07 among the four partners equally. Eleven thousand, seven hundred and twelve dollars and seven cents divided by four equals $2,928.01, which is the actual amount distributed by the commissioner to each partner. Obviously, no undivided profits were included in this division.

The final point for consideration is whether that part of the judgment awarding to Irene Lagares, Clarence Lagares and Xenofon Koukis their shares of the undistributed profits of the new partnership is maintainable against appellant alone. We must hold that it is, for this is an action in accounting. Appellant had control of the funds from which these

sums were to be paid, and it is the legal duty of a partner who withholds that to which the other partners are entitled to deliver it up to them.

That part of the judgment awarding the respondent Irene Lagares individually the sum of $2,708.49 as representing her deceased husband's one-half interest in the undistributed profits of the old partnership is reversed. The remaining portions of the judgment appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied on December 23, 1947, and the following opinion then rendered:

THE COURT.—The contention that this court misstated the record in reference to what assets the commissioner distributed is without merit. The appellants, in their opening brief (p. 3) admit that the commissioner distributed only the proceeds from the sale, and did not distribute the money in bank. In finding No. 2 the trial court found that the parties had stipulated that the proceeds of the sale of the partnership (not the money in bank) should be so distributed. The judgment so provides (C.T. 64). The statement in the opinion correctly reflects the record.