[Civ. No. 7571.   Third Dist.   June 14, 1949.]

ABDUL RAHIM et al., Respondents, v. ALI AKBAR et al.,
Appellants.

McGilvray & McGilvray for Appellants.

Ralph H. Lewis for Respondents.

ADAMS, P. J.—Respondents Abdul Rahim and Abdul Khanan brought this action to have it adjudged they were the owners of a lease on the Metropolitan Hotel in Sacramento, that appellants Ali Akbar and Khan Bahadar held the lease in trust for them, that an assignment of respondents' interest in the lease to appellants be set aside on the ground of fraud and deceit, and that appellants be required to assign the lease to respondents. From a judgment in favor of respondents appellants perfected this appeal.

The evidence is conflicting but there is substantial evidence to support the following findings of the trial court.

On and prior to April 6, 1944, respondent Rahim and appellant Bahadar, as lessees, were the owners of a half interest each in a leasehold estate in and to the Metropolitan Hotel in Sacramento, which lease was for a term beginning June 10, 1944, and ending June 9, 1949, at an aggregate rental of $8,680, $280 thereof being payable upon execution of the lease and the balance at $140 a month. On the same date respondents entered into a partnership and ever since have been copartners, and all transactions herein involved were for the benefit of their partnership. On or about said April 6, 1944, appellant Bahadar stated and represented to respond-

ents that if respondents would conduct the Metropolitan Hotel and pay the rent provided for in the lease, appellants would hold their undivided one-half interest in the leasehold estate in trust for respondents and would assign their interest to respondents upon demand. As consideration for holding said one-half interest in the lease in trust for respondents, it was agreed that respondents would, and they did, pay appellants the sum of $100. Respondents entered upon the leased premises at the beginning of the term, paid the advance rental of $280, and operated the hotel until interrupted by appellants; and while in possession, respondents paid the rent specified in the lease, and since said interruption have made due offer to pay all rent installments falling due during such interruption, and at all times have been and are ready, willing and able to pay the same and the whole thereof. Neither of the respondents is or ever was able to read or write the English language and are almost entirely unable to speak said language. They are Afghans and speak only the Afghan language. Appellants are likewise Afghans, but appellant Bahadar has been and is able to speak English with a considerable degree of fluency, and to read and write English to some extent. At none of the times herein involved have respondents been, or are they now, familiar with the business customs and legal practices in the United States; and, until they entered into the transactions here involved, they were entirely inexperienced in any transaction of the same or of a like nature. Appellant Bahadar, on the other hand, had had considerable experience in such transactions and for a number of years had been successfully operating a hotel business in Sacramento, and had had other varied experiences of like kind and nature; and he, professed to be familiar with making and filing income tax returns and of being likewise familiar with the usual forms and practices of leasing and hiring real property. At all times mentioned prior to the trouble and disputes involved in the action, respondents and appellants were close and intimate friends and social associates, and at all times respondents looked upon Bahadar as their true and loyal friend and each respondent admired and respected his business judgment and acumen and each of them reposed in him great trust and confidence, both as to his business sagacity and honesty and integrity toward each of them. On or about December 14, 1944, when, as aforesaid, appellants

held in trust for respondents an undivided one-half interest in the leasehold estate, and while respondents still regarded Bahadar as their friend, confidant and adviser and still reposed in him their trust and confidence, and prior to Bahadar's having committed any act that caused them to suspect Bahadar of fraud, dishonesty or crookedness, Bahadar brought to respondents a certain document written entirely in the English language and stated and represented to each of them that it was necessary that the document be executed by respondent Rahim, for the purpose of complying with federal rules and laws relating to the income tax of the respondents, and that the document had no other import and effect. Each of the respondents believed and relied upon said statements and representations made by Bahadar and believed the document was some sort of routine document necessary to be signed and filed by respondent Rahim in connection with respondents' income tax and had no other import or effect; and not knowing anything to the contrary, respondent Rahim signed and executed the document and delivered it to Bahadar. It was not true that the document was necessary to be signed or executed for income tax purposes, but said document was a formal and specific assignment by respondent Rahim to Bahadar of all the right, title and interest of respondents in and to the lease of the Metropolitan Hotel.

At this point it is noted that the evidence shows the assignment was executed on December 14, 1944, and that not until June 6, 1946, nearly 18 months thereafter, did appellants assert ownership of the lease, at which time they instituted an unlawful detainer action; and in those intervening months respondents continued in possession of and managed and operated the hotel as lessees thereof.

The trial court further found that at the time Bahadar made said statements and representations to respondents relative to the document purported to be for income tax purposes, he also told respondents that the landlord was complaining about the manner in which respondents were maintaining the hotel premises, and he said that if respondents would thereafter pay their rentals directly to appellants, Bahadar would handle the transactions in relation thereto with the landlord and thus avert further trouble upon that score. Believing and relying upon such representations respondents thereafter paid their monthly rental to Bahadar instead of to the landlord directly as they had previously been doing. It was not true that the landlord had complained to anyone

about the manner of respondents' maintenance of the hotel; and the method of paying rent thus induced by Bahadar was merely an artifice and device calculated by Bahadar to lend color to his fraud and culpability in securing the said assignment. Until a certain judgment of eviction, hereinafter referred to, respondents continued to operate and conduct the hotel; and they purchased furniture, furnishings and equipment and installed same therein at a cost of $4,000, and also made repairs and improvements at an additional cost; and they so diligently and efficiently operated and conducted the hotel that the business was regularly producing for them a net monthly revenue of $416.66 for the several months next preceding and at the time of their eviction; and the business was so successful and lucrative that it was of the value of $12,536.86 at the time respondents were evicted. On or about June 6, 1946, appellants began an action in the municipal court at Sacramento against respondents in which action in unlawful detainer they sought restoration to them of said Metropolitan Hotel and damages for the detention. On August 14, 1946, the municipal court made and entered a judgment in favor of these appellants, adjudging that they were entitled to the possession of the hotel and to recover $500 per month from May 14, 1946, until possession was restored to them. Respondents perfected an appeal from that judgment, but when the appeal came on for hearing in the superior court the parties entered into a written stipulation that the judgment appealed from should be affirmed upon condition that the things found by the municipal court judgment should not be considered as res judicata of the matters and things appearing in the instant action or be a bar to the prosecution thereof. The superior court accepted the stipulation and affirmed the judgment accordingly. These appellants, in compliance with such stipulation, did not plead or assert the municipal court judgment as res judicata of the matters and things herein involved or as a bar to the prosecution of the instant action. After the affirmance of the municipal court judgment, a remittitur went down to that court, and an execution and writ of possession were issued and levied on the properties of these respondents at the hotel, seizing and applying same on that judgment for damages with interest amounting in all to the sum of $3,375.35. The officer serving said writ also forcibly evicted these respondents and their goods and possessions from the hotel and caused them to transport and to store same at a total cost to them of $1,064.06.

The court further found that the conduct of appellant Baha-dar, for and on behalf of appellants, caused the going and flourishing business of respondents to be utterly destroyed and rendered of no value, and caused respondents to suffer the entire loss thereof and use of the hotel from the date of their eviction to the date of restoration, if restoration be had; and found that if respondents were not restored to possession, then they would have suffered damage from the loss of the business and the leasehold estate in the sum of $5,000 per year from December 1, 1946, to the end of the term, the value thereof, together with the sums caused by the levy of writs, amounting in all to $16,976.27; but that in the event appellants restored the business and premises to respondents, respondents' damages would be $4,439.41 together with the sum of $416.66 for each and every month between the time of eviction and the restoration.

The judgment followed the findings and adjudged that re-spondents were the equitable owners of the leasehold estate and that appellants held the bare legal title thereto for re-spondents as their trustee; that respondents should recover from appellants, and each of them, the sum of $4,439.41 to-gether with the sum of $416.66 per month for each and every month subsequent to December 1, 1946, until the end of the term of the lease or respondents' restoration to peaceful pos-session, whichever event might first occur, and that appellants should assign the lease to respondents and restore them to possession; and if appellants were not able to restore respond-ents to possession within 10 days after entry of the judgment, that respondents recover from appellants, jointly and sev-erally, the sum of $16,976.27 as money and property fraud-ulently and corruptly obtained by them from respondents as a result of the fraud and misrepresentations practiced upon respondents by appellants.

Before proceeding with a consideration of the contentions made by appellants, it must be understood that this court may not interfere with the trial court's findings since they are supported by substantial evidence. (2 Cal.Jur. 921, § 543; *Tobola* v. *Wholey,* 75 Cal.App.2d 351, 355 [170 P.2d 952]; *People* v. *Cannon,* 77 Cal.App.2d 678, 688 [176 P.2d 409]; *Lagares* v. *Kappas,* 82 Cal.App.2d 569, 577 [186 P.2d 471]; *Dreyer* v. *Cole,* 210 Cal. 339, 341 [292 P. 123].)

The first contention of appellants is that the municipal court judgment was res judicata on the controversial issues determined in the instant action. With that contention we

cannot agree. The instant action was filed in the superior court on June 24, 1946, and appellants filed their answer therein on July 3, 1946; the municipal court action went to trial thereafter, to wit, on July 23, 1946, and therefore the instant action was at issue and pending when the municipal court action went to trial. From an adverse judgment entered in the municipal court these respondents perfected an appeal, and pending that appeal the parties entered into the written stipulation filed in the cause, which stipulation in material part provided that the judgment of the municipal court should be affirmed but that the affirmance "shall not be construed as being res adjudicata of the equitable defenses interposed by defendants and appellants [these respondents] . . . which said defenses are now the basis of an equitable action between the parties to this action and which action is *now pending* in the Superior Court . . ." (Italics added.) In affirming the municipal court judgment the appellate department of the superior court recognized the stipulation and in material part ordered: ". . . that in accordance with said stipulation, said affirmance does not pass on the merits of the affirmative defense interposed by the appellants and defendants [these respondents] and which affirmative defense is now the subject of an action *pending* in the Superior Court . . ." (Italics added.)

By virtue of said stipulation, the judgment of the municipal court is not res judicata in this action. (*Comer* v. *Associated Almond Growers,* 101 Cal.App. 687, 689 [282 P. 532]; *Morrow* v. *Morrow,* 40 Cal.App.2d 474, 485 [105 P.2d 129], hearing in Supreme Court denied; *City of Los Angeles* v. *Cole,* 28 Cal.2d 509, 515 [170 P.2d 928]; *Buick* v. *Boyd,* 37 Cal.App. 508, 512 [174 P. 913].) ■ Also it is to be noted that at no time during the trial, and not until after all the evidence was in, did the appellants assert or claim that the municipal court judgment was res judicata. The case was tried without any plea of res judicata and upon the theory that no such issue was involved. Under such circumstances a litigant will not be permitted to assert a different claim or theory for the first time on appeal. (*MacKenzie* v. *Angle,* 82 Cal.App.2d 254, 263 [186 P.2d 30], and cases therein cited, hearing in Supreme Court denied; *Wiltsee* v. *Utley,* 79 Cal.App.2d 71, 75 [179 P.2d 13]; *Holbrook* v. *Smith,* 87 Cal.App.2d 66, 71 [196 P.2d 84]; *Guardianship of Romine,* 91 Cal.App.2d 389, 393 [205 P.2d 733].)

Appellants next argue that the evidence was insufficient to establish a confidential relationship between appellants and respondents. The entire record has been examined and therein we find substantial evidence to support the trial court's finding on that subject. Therefore, this court will not interfere with that finding. (*Adams* v. *Talbott,* 61 Cal.App.2d 315, 320 [142 P.2d 775], hearing in Supreme Court denied.)

Next appellants question the sufficiency of the evidence to sustain the finding that appellants procured by fraud the assignment from respondents of their interest in the lease. There is substantial evidence to support the finding that at the time the assignment was executed appellants held a one-half interest in the lease in trust for respondents and while respondents regarded appellant Bahadar as their friend, confidant and adviser and reposed in him their trust and confidence, and before he committed any act that caused them to suspect him of dishonesty or crookedness, he brought to respondents the document typewritten in the English language and represented to respondents that it was necessary that they execute the document for their income tax purposes; and that believing such representation they signed the document which turned out to be an assignment by respondents of all their interest in the lease. In view of the evidence, this court will not interfere with that finding.

The next contention of appellants is that the statute of frauds barred respondents' claim. With that we cannot agree. The contention is based on the proposition that the alleged oral agreement between the parties involved an assignment of a lease to real property and was required by section 1624, subdivision (4) of the Civil Code, and section 1973, subdivision 4 of the Code of Civil Procedure, to be in writing and subscribed by the party to be charged. Those code sections are not applicable to this case for the reason that an oral trust existed between the parties and appellants were found guilty of fraud. In his opinion the trial judge stated: "The statute of frauds is not available to one who seeks to invoke it that he may retain the fruits of fraud." Under such circumstances appellants will not be permitted to set up the statute of frauds as a defense. (*Le Blond* v. *Wolfe,* 83 Cal. App.2d 282, 286 [188 P.2d 278]; 12 Cal.Jur. 933, § 102.)

Appellants next claim that they did not practice fraud upon respondents. The difficulty with that contention is that the trial court found against them on that issue and the finding is supported by substantial evidence. In such a case the

rule is thus stated in *Noll* v. *Baida*, 202 Cal. 98, 101 [259 P. 433] : ". . . it is for the trial court to determine the weight of the evidence, and while it cannot find fraud upon a mere suspicion, yet if there is any substantial evidence tending to prove fraud, it is for the trial court to determine whether such evidence outweighs or preponderates over that adduced in opposition thereto, and when the trial court has found that such evidence does so preponderate, its decision thereon is final, and an appellate court has no right or authority to disturb such finding, . . ." (Cases cited.) The rule above quoted from the Noll case has been cited and adopted in the following later cases: *Divani* v. *Donovan*, 214 Cal. 447, 452 [6 P.2d 247] ; *Boulevard Land Co.* v. *King*, 125 Cal.App. 224, 226 [13 P.2d 864] ; *Bank of America* v. *Sanchez*, 3 Cal.App. 2d 238, 242 [38 P.2d 787] ; *Cox* v. *Klatte*, 29 Cal.App.2d 150, 161 [84 P.2d 290] ; *Brakhage* v. *McCaslin*, 52 Cal.App.2d 382, 386 [126 P.2d 378].

Finally, appellants argue that there is no presumption of fraud. That is a correct statement as a general matter, but it has no force in this case for two reasons: (1) Upon substantial evidence the trial court found and concluded that appellants were guilty of actual fraud; (2) the court found on substantial evidence that a relation of trust and confidence existed between the parties, and such a relationship creates an exception to the rule stated. (*Levy* v. *Scott*, 115 Cal. 39, 42 [46 P. 892] ; *Wendling Lumber Co.* v. *Glenwood Lumber Co.*, 153 Cal. 411, 417 [95 P. 1029] ; *Millard* v. *Epsteen*, 58 Cal.App.2d 612, 616 [137 P.2d 717] ; 12 Cal.Jur. 818, § 72.)

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied July 14, 1949, and appellants' petition for a hearing by the Supreme Court was denied August 11, 1949.