## TILLIE M. SMITH v. JOHN J. SMITH.[1]

January 18, 1952.

No. 35,495.

---

[1]Reported in 51 N. W. (2d) 276.

*Gerald D. Shively* and *Dell, Rosengren & Rufer,* for appellant.

*Harry E. Burns* and *Sydney A. Gross,* for respondent.

KNUTSON, JUSTICE.

Prior to October 16, 1948, plaintiff and defendant were husband and wife. On September 10, 1948, plaintiff commenced an action for divorce against defendant. Thereafter they agreed between themselves on a property settlement. On October 1, 1948, plaintiff's attorney called on defendant and procured his signature to a stipulation intended to be used in the divorce action, the material part of which reads as follows:

414

"* * * it is hereby stipulated and agreed by and between the parties hereto that in the event the Court sees fit to grant the plaintiff the relief prayed for in her complaint herein, that the judgment in said action shall have nothing to do with any of the properties of the parties to this action, they having heretofore arrived at an agreement of the proper final division of all property that belonged to said parties, and plaintiff acknowledges that she has as of the date of this agreement received everything that has been due to her to-date or that will be due to her in the future, and that she will not look to the defendant for any support money, alimony or look to him for anything in the way of properties after the judgment of divorce has been entered."

At the time the stipulation was signed defendant was not represented by counsel. He did not appear in the divorce action, and it was submitted to the court upon default. In its findings, the court recognized the stipulation signed by the parties and included the following paragraph:

"7. That pursuant to stipulation of the parties, which is hereby approved by the Court, a full and final division of property has been made in lieu of all alimony or other provision as between the parties and the Court incorporates the same and considers the contents thereof as being a part of its findings."

The conclusions of law of the court, as well as the judgment later entered, are entirely silent on the question of property settlement, division, or payment of alimony.

At the same time that plaintiff's attorney procured defendant's signature to the stipulation set forth above, he procured from defendant a promissory note in the principal sum of $10,000, payable after the date of the divorce. Plaintiff claims that the agreement between the parties called for payment of $50,000. Defendant contends that it called for payment of $40,000. It is not denied that prior to the date of the divorce decree defendant paid plaintiff $30,000 in cash and bonds and later paid the $10,000 note, so that she has actually received $40,000. Nor is it disputed that at least

a part of the $30,000 was paid after the stipulation above mentioned was signed. Plaintiff contends that, in addition to the $40,000 so paid, defendant agreed to pay an additional $10,000 after he had sold his implement business. Defendant denies any such agreement.

After the divorce plaintiff moved to Stanley, Wisconsin. At the trial of the action now before us, she testified that on June 15, 1949, she returned to Sauk Centre, where defendant lived, and called him on the telephone, whereupon the following conversation ensued:

"A. I talked to him over the telephone and asked him if he had the balance of the money that he owed me because I needed it in my place of business, and he said he had some.

\* \* \* \* \*

"Q. What was it you asked him and what did he say?

"A. He said he had some money for me and that I could come down to the shop and get it, and I said I was not going to the shop and be abused by him in front of the public and the help, and he told me that at noon I could drive to his trailer in back of the shop and he would have part of that money ready for me, and so I did. I drove down there at noon that day and back of the shop to where the trailer was and he came out and handed me a check for $2300."

The $2,300 check referred to in this conversation was issued by the Stearns County Credit Corporation to one Henry Rieland. He in turn endorsed it in blank and delivered it to defendant as payment on some farm implement he had purchased from defendant. That it came into the possession of plaintiff is not denied. She presented it for payment, and thereafter payment was stopped at the request of defendant. Plaintiff thereupon brought an action in the district court of Stearns county against the maker of the check, in which defendant intervened. The action was tried to a jury, and a verdict rendered in favor of plaintiff. While it is her contention here that this $2,300 check was part payment of the $10,000 balance which she claims was unpaid, examination of the file, including the

transcript of the testimony in the check case, shows that the only question submitted to the jury was whether plaintiff obtained the check from defendant for a valuable consideration. It was the contention of defendant in the check case, as it is here, that plaintiff surreptitiously removed the check from the cash register in defendant's place of business in some unknown manner.

After judgment was entered in the check case, plaintiff commenced this action to recover the balance of $7,700 alleged to be due on the $10,000 payment which she claims was to be made after the implement business was sold. The case was tried to the court without a jury. Findings adverse to defendant were filed and judgment entered, and this appeal is from such judgment.

It is the contention of defendant: (1) That the indebtedness upon which this action is based is barred because the divorce decree renders it *res judicata;* (2) that the question whether plaintiff received everything she had coming was adjudicated against plaintiff in the divorce action, and that she is now estopped by verdict from questioning that fact; (3) that plaintiff is estopped from asserting the claim by her conduct in regard to the property settlement and the divorce proceedings; and (4) that plaintiff has waived her right to assert such claim by virtue of the property settlement and the divorce action. Defendant also assigns as error the trial court's reliance upon the verdict in the check case as establishing an estoppel by verdict in favor of plaintiff.

In dealing with the various contentions of defendant, it is well to keep in mind the distinction between the bar of a judgment on the merits, which is based on the doctrine of *res judicata;* estoppel by verdict; and an estoppel based upon the conduct of the parties. See, Annotation, 88 A. L. R. 574. The distinction between the first two is probably nowhere better stated than in Cromwell v. County of Sac, 94 U. S. (4 Otto) 351, 352, 24 L. ed. 195, 197, where the court said:

"* * * there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another

action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

In Swank v. St. Paul City Ry. Co. 61 Minn. 423, 425, 63 N. W. 1088, 1089, speaking through Mr. Justice Mitchell, we said:

"* * * counsel has failed to distinguish between estoppel by former judgment and estoppel by former verdict. A former judgment on the same cause of action, being a complete bar to a second action, must always be pleaded by way of defense. * * * But a former judgment is no bar to a second suit upon a different cause of action. It merely operates as conclusive evidence of the facts actually litigated in the first action, and upon the determination of which the finding or verdict therein was rendered, and need not be pleaded any more than any other evidence. In such a case it is proper for a party to plead his cause of action or defense in the ordinary form, leaving the judgment to be used in evidence to establish his general right."

■ A finding of a court or a verdict is no bar to the bringing of another action until it passes into judgment. State v. Brooks-Scanlon Lbr. Co. 137 Minn. 71, 162 N. W. 1054; Mitchell v. Bazille, 216 Minn. 368, 13 N. W. (2d) 20; Stevens v. Minneapolis Fire Dept. Relief Assn. 219 Minn. 276, 17 N. W. (2d) 642.

■ Where a particular matter or issue is withdrawn or withheld from consideration of the court, either by stipulation of the parties or otherwise, it is not adjudicated, and a judgment entered on other issues will not act as a bar to another action on the issues so withdrawn.

In Kinzel v. Boston & Duluth Farm Land Co. 124 Minn. 416, 419, 145 N. W. 124, 126, after recognizing the general rule that a judgment on the merits constitutes an absolute bar to a second suit for the same cause of action and is conclusive between the parties and privies not only as to every matter which was actually litigated, but also as to every matter which might have been litigated therein, we said with respect to the rule:

"* * * The rule stated may be subject to some exceptions, as for instance it might be shown that a particular issue or question was not in fact litigated by reason of its express withdrawal before the trial or final submission of the case * * * or, in a case involving several causes of action, that one of them was dismissed or expressly abandoned before trial."

In Fox v. Fox, 154 Minn. 169, 174, 191 N. W. 420, 421, we said:

"* * * A doctrine generally approved by the courts is that, where a former judgment is set up as a bar, plaintiff may avoid an estoppel by showing that a particular matter involved in the prior litigation was distinctly withdrawn, abandoned, ruled out or withheld from the consideration of the jury so that it constituted no part of the verdict or judgment rendered thereon. * * * Obviously the doctrine is just. It would be a perversion of the res judicata rule to hold that a judgment is a bar to a subsequent action to recover upon a claim which neither court nor jury has ever considered or determined on the merits."

See, also, O'Neil v. Rueb, 215 Minn. 296, 10 N. W. (2d) 363; Steinberg v. Silverman, 186 Minn. 640, 244 N. W. 105; Ross v. Amiret Farmers Elev. Co. 178 Minn. 93, 226 N. W. 417; 50 C. J. S., Judgments, § 729.

◼ With respect to the precise question under consideration, we find the following statement of the applicable rule in 2 Freeman, Judgments (5 ed.) § 912:

"* * * an allegation of the settlement of the property rights of the parties, outside of court, does not raise an issue as to the nature of those rights nor make the judgment an adjudication of anything except the fact of a settlement. And though the decree provides that the 'property be awarded in accordance with said agreement' it is not such an adjudication as to bar a subsequent action to reform the contract."

In Buick v. Boyd, 37 Cal. App. 508, 509, 174 P. 913, cited in support of the above text, the facts are almost identical with those now before us. The stipulation in that case contained the following statement:

"* * * the parties hereto are desirous of settling said dispute of claims to the property in controversy and withdrawing the same from the consideration of the court, * * *, Now, therefore, it is hereby mutually covenanted, * * *."

The interlocutory decree of the court contained the following reference to the stipulation (37 Cal. App. 509, 174 P. 913):

"* * * And it further appearing that the rights of the respective parties in and to the property described in said complaint have been equitably adjusted by an agreement between the parties, it is determined that the said property be awarded to the respective parties in accordance with said agreement, * * *."

On appeal the court said (37 Cal. App. 512, 174 P. 914):

"* * * The court in its decree determined nothing more than that the 'property be awarded to the respective parties in accordance with said agreement.' There was no longer any issue as to the

property, nor was it necessary for the court to make any determination of the matter. The action of the court did not, in our opinion, amount to such an adjudication as is contemplated by the statute, nor did it constitute a bar to the present action. It added nothing to the validity or force of the agreement. There were in fact but two questions remaining for the court to determine, to wit, whether plaintiff was entitled to the decree of divorce and to whom the custody of the minor children should be awarded. 'A former verdict is conclusive only as to facts directly and distinctly put in issue and the finding on which is necessary to uphold the judgment.' (1 Freeman on Judgments, sec. 257.) Where the record on its face shows that an issue before the court was withdrawn from consideration, the presumption that it was adjudicated no longer applies."

See, also, Beals v. Ares, 25 N. M. 459, 185 P. 780; 3 Dunnell, Dig. & Supp. § 5163.

We have held that a divorce obtained in another state is not a bar to an action for alimony in this state. Thurston v. Thurston, 58 Minn. 279, 59 N. W. 1017.

We have not overlooked Sprague v. Sprague, 73 Minn. 474, 76 N. W. 268, 42 L. R. A. 419, and other cases of like import. However, in those cases, there was no showing that the issue of property settlement was withdrawn from consideration by the court. Consequently, they are not authority for the proposition which we now have under consideration.

It is clear, in the case now before us, that the issue involving a property settlement was withdrawn from the court's consideration by the stipulation of the parties. Consequently, the divorce decree is not a bar to this action, even if we could assume that it is an action to establish or determine property rights.

■ Neither can it be said that there is an estoppel by verdict. The entire file in the divorce proceedings was received in evidence. We have carefully examined the file, including a transcript of the testimony offered at the divorce trial. The case was tried as a default. The only reference to the property settlement appears to be the following:

"Mr. Burns: You and your husband have reached a property settlement so that in case the court saw fit that you should receive the divorce there isn't anything to worry about in the way of property?

"Mrs. Smith: No.

       \*    \*    \*    \*    \*

"The Court: So far as the property settlement is concerned that has been completed so that we don't have to embrace it in the findings?

"Mr. Burns: That is right."

It is therefore obvious that the property settlement was based entirely upon the agreement of the parties and not upon any trial of that issue by the court.

■ Defendant next contends that plaintiff is estopped from asserting the claim by her conduct. This claim is apparently based on the fact that after signing a stipulation stating that she had received the property she was entitled to and that she would not look to defendant for any property after the divorce was granted she proceeded to procure the divorce. There might be some merit to this contention if plaintiff were seeking to obtain more property than the stipulation called for. The difficulty is that the stipulation fails to show what the agreement of the parties was. The whole case centers around a determination of the conflicting claims of plaintiff and defendant, plaintiff claiming that she was to receive $50,000 in money and property and defendant claiming that she was to receive $40,000 worth of property. If, as plaintiff claims, the agreement called for payment of $50,000, it is difficult to see how she could be estopped from asserting that claim by procuring the divorce. Defendant was as much bound by the agreement as plaintiff.

■ Neither is there any evidence of a waiver. A waiver is a voluntary relinquishment of a known right. There is no evidence that plaintiff ever relinquished anything.

■ In its essence, defendant's first two points are based on the assumption that this action is founded upon an attempt to collect alimony, or something in lieu of it, after the divorce decree was

entered. The trouble with this argument is twofold. In the first place, it is obvious that the court did not pass upon the division of property at all; and, in the second place, neither the stipulation, findings, nor judgment shows what agreement was made in specific terms. Rather than being an action by which a right of alimony or property division is sought, this is essentially a suit on an oral agreement for the division of property in lieu of alimony. Had the contract specified in writing that defendant was to pay plaintiff $10,000 after his implement business was sold, there would probably be no more dispute about the validity of the agreement than there was about the validity of the note for $10,000, which was also paid after the date of the divorce. The fact that such agreement was oral makes it no less enforceable once the trier of fact determines that it was part of the agreement.

It is true that the stipulation provides that plaintiff has received everything that was due her to date or will be due her in the future; but the record clearly shows that that was not true and that she did receive most of the property which came to her after the stipulation was signed. It is true also that the stipulation contains this provision:

"* * * she [plaintiff] will not look to the defendant for any support money, alimony or look to him for anything in the way of properties after the judgment of divorce has been entered."

The main question is what was meant by the term "properties." If there was an agreement to pay in the future, it might be considered, as plaintiff contends, to be the property which she was to receive.

The stipulation is not a model of clarity. It would have been better had it specified what the terms of the settlement were, especially in view of the fact that one of the parties was not represented by counsel. There is much in the record which would indicate that all parties considered the payment of the $10,000 note to be the final payment. It is difficult to see why another note, or at least some memorandum in writing, was not taken to evidence the payment of the $10,000 which was to be paid when the implement

business was sold. A few days after the stipulation was signed, plaintiff's attorney, on October 7, wrote defendant a letter in which, among other things, he said:

"If you will be good enough to send your check for $975.00 to me, I will send you a receipt that she has received her share of the property in full."

It is not disputed that defendant did send the $975 as requested. There is, however, evidence that defendant recognized the existence of an unpaid amount. It is not enough that, were we sitting as triers of fact, we might reach a conclusion opposite to that reached by the trial court. If the testimony of plaintiff is accepted, and it is apparent that it was, the existence of the debt would be established. In answer to the letter of October 7 written by plaintiff's attorney to defendant, defendant wrote plaintiff's attorney a letter on October 10, 1948, in which he said:

"In regards to your letter and Mrs Smith writeing check, we never gave Mrs Smith the right to sign my mane [*sic*] to check and we have had quite a munber [*sic*] of them, when we close[d] the Account with the State Bank to get the money to pay her the Io.ooo.oo we dident no [*sic*] anything about these checks, We have been in the past giveing Mr [*sic*] Smith $9o.oo per month to pay the Groc bills, in regards to the Bonds I told her that there wasent Io.ooo.oo and she says she new [*sic*] better and I told her that she could have what there was, know them [now, then], we dont want any more of this come back, she made up what she wanted and I gave her just that way only the Midwest Oil Co Stck which she offer[ed] 4ooo.oo [for] and I told her that it wasent worth that and I would give her the Io.ooo.oo *and a other Io.ooo.oo when we sold the shop.* and keep the Midwest Stock, if she wants the extre [*sic*] bonds and the 9o.oo we want her to take this Midwest stock at $4ooo.oo and credit is [it] on the Io.ooo.oo note, I think I can borrow the bal to pay her the $6ooo.oo plus the Midwest Stock in about 2 weeks, if she wants the Midwest stock we can have them both in about 2 weeks," (Italics supplied.)

Both the jury in the check case and the trial court in the case now before us have rejected the claim that plaintiff came into possession of the $2,300 check surreptitiously. If, as plaintiff contends, defendant delivered to her the $2,300 check as part payment of the larger indebtedness of $10,000, it must follow that the balance was as much a legal obligation as the first payment. We are of the opinion that there is sufficient evidence to sustain the court's finding. Inasmuch as the whole question of liability was litigated, we need not determine whether the verdict in the check case constitutes an estoppel by verdict.

Affirmed.

