Arthur R. HENDERSON et al., Appellants,

v.

SNIDER BROS., INC., et al., Appellees.

Oliver A. COWAN, Jr., Appellant,

v.

Arthur R. HENDERSON et al., Appellees.

Nos. 13271, 13876.

District of Columbia Court of Appeals.

Argued Jan. 18, 1979.

Decided Dec. 19, 1979.

Shellie F. Bowers, Washington, D. C., for appellants Arthur R. Henderson et al.

Jeffrey M. Frost, Chevy Chase, Md., for appellees Snider Bros., Inc., et al., Profit Sharing Trust.

Michael A. Schuchat, Washington, D. C., for appellees Abraham H. Goldkind, Helen Goldkind, Ely Weinkranz and Lena Weinkranz.

Loren Kieve, Washington, D. C., for Oliver A. Cowan, Jr.

Richard W. Galiher, Washington, D. C., filed a brief on behalf of Snider Brothers, Inc. and Oliver A. Cowan, Jr.

Before KELLY and MACK, Associate Judges, and YEAGLEY, Associate Judge, Retired.

KELLY, Associate Judge:

This case presents the issue of whether a Maryland decree effecting a sale in foreclosure of property owned by appellants has a collateral estoppel effect on appellants' subsequent claims that they were fraudulently induced to purchase the property and that one of their partners violated his fiduciary duty to the partnership and is guilty of misrepresentation. The trial court, in consideration of the former claims, found that collateral estoppel applied to bar the fraud claim and dismissed that portion of the complaint. Appellants in No. 13271 cite that dismissal as error.[1] Appellant in No. 13876 cites the trial court's failure to dismiss the breach of fiduciary duty and misrepresentation claims as error.

On February 14, 1973, Drs. Henderson, Staton, Blackwell, Hyde, Edwards, and West and their respective wives formed a partnership with Oliver Cowan and his wife in order to purchase the Parkview Towers Apartments in Takoma Park, Maryland. They did so purchase the property from Messrs. Goldkind and Weinkranz and their wives for $1,800,000. The purchasers assumed a wrap around mortgage of about $1,450,000, tendered $110,000 cash, and executed two deferred purchase money notes, number one in the amount of $249,222.54 and number two for $50,000. Snider Brothers, Inc. served as real estate brokers for the sale; it later also became the holder of the notes. Cowan was an employee of Snider Brothers.

For various reasons, the investment turned bad. The doctors believed that the revenues generated by the property would be sufficient to sustain the property and retire the notes; apparently such was not the case.

In July of 1975, appellants discovered that note number two, the $50,000 note, had been negotiated to their partner Cowan. They made no further payments on the note. In January 1976, Snider Brothers informed appellants that it held note number two and that the balance due was $37,959.64. The note, apparently was then negotiated to Snider Brothers, Inc. Profit Sharing Trust.[2]

---

1. References to appellants, unless otherwise noted, mean appellants in No. 13271.

2. Appellants allege that Snider Brothers, Inc. Profit Sharing Trust is not shielded from the

Appellants filed the suit against the sellers, Snider Brothers, Inc. Profit Sharing Trust, and Cowan, which is the subject of this appeal on February 11, 1976.[3] The suit alleged that Cowan, as an agent for Snider Brothers, fraudulently induced appellants to enter into the purchase by representing to them that the investment was a good one; that they would be making a fixed, limited investment for the purpose of acquiring a tax shelter; that the property would be self-sustaining; and that he, Cowan, would have no interest in the property, other than that of a partner, and that he would be receiving no commission from the sale.[4]

On March 2, 1976, the sellers initiated foreclosure proceedings in a Maryland court. Appellants did not contest the foreclosure, but did file exceptions to the auditor's report. They also brought the District of Columbia action to the attention of the Maryland court and asked that any judgment against appellants in Maryland be offset by any judgment for appellants in the District.

The Maryland court modified and ratified the auditor's report. No appeal was taken. On August 11, 1977, appellees filed a motion in the Superior Court of the District of Columbia to dismiss appellants' fraud action on the basis of res judicata. After initially denying the motion, the trial court, relying on the doctrine of collateral estoppel, ultimately granted it as to all defendants (appellees) except Cowan (the fiduciary duty claim). Although the ruling on Cowan's motion was not a final judgment, he brought this appeal pursuant to Super.Ct. Civ.R. 54(b).[5] That appeal was consolidated by this court with the appeal from the dismissal order.

In Part I of this opinion, we compare the doctrines of res judicata and collateral estoppel to determine which doctrine is the appropriate one to apply here. Part II will analyze appellants' claim of fraud with respect to the elements of the appropriate doctrine. In Part III, we address the relationship between the Maryland foreclosure action and appellants' claim of fraud. Finally, in Part IV, we apply the law to the facts in No. 13271 in resolution of the issues. No. 13876 is discussed in Part V.

## I

■ The trial court held, and we agree, that this case presents issues of collateral estoppel, not res judicata. Literally, res judicata means "matter adjudged." 46 Am. Jur.2d § 394 at 558 (1969). It contemplates a situation where a specific cause of action that has been brought to a final judgment is the subject of a second suit. Collateral estoppel, on the other hand, involves relitigation of matters of fact which were, and necessarily must have been, determined in the first litigation. *Tutt v. Doby*, 148 U.S. App.D.C. 171, 459 F.2d 1195 (1972).[6] *But*

personal *"defense" of fraud in the inducement* as it had knowledge of the facts that give rise to the claim and thus cannot be considered holders in due course.

3. The complaint was amended on February 23, 1976, to include D.C.Code 1973, § 13–428 (long-arm statute) as a basis of jurisdiction.

4. Appellants requested $397,000 compensatory damages, the difference between purchase price and fair market value of the property. They also requested $500,000 punitive damages and $52,958.64, the amounts paid on the deferred purchase money note.

5. Super.Ct.Civ.R. 54(b) provides:
   Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple

parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action *as to any of the claims or parties,* and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

6. The concept that a fact need not be actually litigated in order to be necessarily determined appears in court decisions and commentaries

see *David v. Nemerofsky*, D.C.Mun.App., 41 A.2d 838 (1945).

■ A number of concepts inhere to the doctrines; most prominent among them is the need for judicial economy and finality of judgment. Where there exists but one allegation of wrongdoing, the aggrieved party should be given but one opportunity to allege that wrong. Similarly, where the facts that give rise to a legal action are fully litigated in one forum, there is no rationale for relitigating those facts elsewhere. To follow any other course of action would be to waste valuable judicial resources, *Tutt v. Doby, supra* 148 U.S.App. D.C. at 175, 459 F.2d at 1199.

The doctrine of collateral estoppel is involved here. The first action was one of foreclosure on a mortgage, an action in equity governed by equitable principles and procedures. The second was an action at law based on the common law tort of fraud. Conceptually, as well as facially, the two are distinct actions, and while a judgment in the former may finally conclude some issues pertinent to the second, it cannot be said that such judgment precluded litigation of the entire second cause of action.

## II

The elements of collateral estoppel were set out succinctly in 1B Moore's Federal Practice ¶ 0.443[1], at 3901 (3d ed. 1974):

Among the requirements courts have set out in order that collateral estoppel may apply are the following. The issue to be concluded must be the same as that involved in the prior action. In the prior action, the issue must have been raised and litigated, and actually adjudged. The issue must have been material and relevant to the disposition of the prior action. The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. [Footnotes omitted.]

Moore's notes that each of these elements must be present for the application of the doctrine; otherwise, relitigation of the issue in question would not be barred. *Id.* at 3902.

As noted earlier, there exists some degree of confusion as to whether the appropriate standard for the application of collateral estoppel is "actually litigated and necessarily decided," or "actually litigated or necessarily decided." *See* note 6 *supra*. In this jurisdiction, both standards have been used, either implicitly or explicitly. *Compare David v. Nemerofsky, supra,* and *Tutt v. Doby, supra,* 148 U.S.App.D.C. at 173, 459 F.2d at 1197,[7] *with Liberty Mutual Insurance Co. v. District of Columbia,* D.C.App., 316 A.2d 871, 874 (1974), and *Tutt v. Doby, supra,* 148 U.S.App.D.C. at 175 & n. 4, 459 F.2d 1199 & n. 4. *Accord, United States v. Smith,* D.C.App., 337 A.2d 499 (1975) (criminal case). The reason for this confusion, in this jurisdiction as well as others, is the tendency of courts to label, as res judicata, a broad spectrum of doctrines of issue preclusion including both res judicata and collateral estoppel. *Moore's, supra* ¶ 0.441[2] at 3775; *see Liberty Mutual Insurance Co. v. District of Columbia, supra* (treating issue as collateral estoppel, citing cases on res judicata); *Gordan v. William J. Davis, Inc.,*

on the subject of collateral estoppel. *See, e. g., Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *David v. Nemerofsky, supra; National Lead Co. v. Nulsen,* 131 F.2d 51 (8th Cir.), *cert. denied,* 318 U.S. 758, 63 S.Ct. 533, 87 L.Ed. 1131 (1942); 1B Moore's Federal Practice ¶ 0.441[2], at 3777 (3d ed. 1974). Therefore, it would seem natural to refer to the rule in the disjunctive: matters of fact actually litigated *or* necessarily determined. Interestingly, the opinions regularly make reference to the collateral estoppel effect on issues of fact "actually *and* necessarily determined." *Montana v. United States, supra,* at 974 (emphasis added); *Tutt v. Doby, supra*

(using both "and" and "or"). This anomaly is probably derived from a semantic confusion. The import of this confusion is great and is discussed *infra*.

7. The impact of these cases as binding law in this jurisdiction is somewhat doubtful. *Tutt* seems to declare that *Nemerofsky* is incorrect. *Tutt* itself, however, is internally inconsistent, *see* citation in text at this footnote, and also it is not binding on this court. *See Pernell v. Southall Realty,* D.C.App., 294 A.2d 490, 497 n.22 (1972); *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

D.C.App., 270 A.2d 138, 139, 140 (1970), citing *Tutt v. Doby,* D.C.App., 265 A.2d 304 (1970), *rev'd,* 148 U.S.App.D.C. 171, 459 F.2d 1195 (1972) (applying res judicata where first judgment was a default judgment for rent and second suit involved housing regulations issues); *Abramson v. Grady,* D.C. App., 234 A.2d 174 (1967) (using an "actually litigated and necessarily decided" standard for res judicata). As a result, the distinction between the doctrines sometimes becomes blurred.

■ The distinction between the doctrines, as noted above, is a real one, and it results in two distinct tests for issue preclusion. Where res judicata applies, any issue that was raised, or that could have been raised, is concluded by the final order. Where collateral estoppel applies, only those issues actually raised and litigated to final determination are concluded. Moore's *supra* ¶ 0.443[3] at 3910. As Moore's points out,

> [t]his does not, of course, mean that collateral estoppel permits a contention not made in the prior action to be urged subsequently as a means of contradicting an adjudicated finding; in such a case, the new contention is subsumed in the issue already adjudicated, and is thus precluded. But it does mean that a new issue, which can be urged without any contradiction of the prior adjudication, remains open to litigation. This frequently is the case when, in the first action, the defendant failed to assert an affirmative defense. A judgment for plaintiff in this situation does not adjudicate upon the matter of defense; and, while the judgment is res judicata of plaintiff's cause of action, it does not conclusively establish the absence of the defense for collateral purposes. [*Id.* at 3910–11 (footnotes omitted).]

Although we have made our point, it may be prudent to give it emphasis by quotation from the landmark case of *Cromwell v. County of Sac,* 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877):

> In considering the operation of this judgment [on the earlier maturing cou-

pons], it should be borne in mind, . . . that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defences never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

> But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In

all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action. [Footnote omitted.]

For an initial indication of whether the issue of fraud had been raised and adjudicated, we look to the pleadings of the first suit to determine if the facts in question here were in issue there. *Antonelli v. Smith,* D.C.Mun.App., 113 A.2d 570, 571 (1955); *Vance v. Wilson,* 382 S.W.2d 107 (Tex.1964). Some jurisdictions hold that if the issue was not pleaded, it cannot be considered to have been concluded. *Cf. id.* at 571–72 (stating corollary: pleaded issue is finally determined). In the present case, appellants pleaded fraud only to the extent that they asked that any judgment received in the Superior Court be used to offset a judgment in the Maryland court. No adjudication of the issue was requested. Logically, appellees offered no response in the Maryland suit to appellant's request for an offset. A view of the pleadings, therefore, militates against a finding of a bar.

We next look to the evidence adduced at trial, for some jurisdictions use that as an indication of whether a judgment in the first suit necessarily concluded an issue sought to be raised in a later suit. *E. g., Harvey v. Getchell,* 390 Or. 205, 225 P.2d 391 (1950). Because of the nature of the Maryland action, that is a hearing on exceptions to an auditor report, there was no discussion of fraud during the hearing. In such an inquiry, defendants admit that a foreclosure and sale are appropriate but contest the findings of the auditor. There is no need to investigate the validity of the underlying mortgage. Therefore, no evidence concerning fraud was presented during that hearing.[8]

▮ The order issued by the Maryland court provides another indication of the applicability of collateral estoppel. Where the court makes an explicit ruling on a particular issue, collateral estoppel is applicable and the issue is resolved. Obversely, where the court explicitly declines to rule on a particular issue, there is no collateral estoppel effect. *See Harvey v. Getchell, supra* at 396.

Here, the court took no explicit position in relation to the fraud issue. Although it has been held that absent a finding on an issue there can be no subsequent bar, *see Smith v. Smith,* 235 Minn. 412, 51 N.W.2d 276 (1952), the better rule is that there will be no bar only where the court explicitly declines to rule or where it is clear from the record, order, or other extrinsic factors that the court did not intend to conclude the issue. *See David v. Nemerofsky, supra; Bloch v. Mill Factors Corp.,* 119 F.2d 536 (2d Cir. 1941); *Smith v. Smith, supra.* Applying that standard, collateral estoppel would preclude relitigation of the fraud issue in the District of Columbia. However, since the issue was never pleaded in Maryland, there is good reason for the omission of an explicit ruling by the Maryland court.

The fraud issue was, therefore, never actually litigated in the Maryland proceedings. We must consider it as an omitted issue and determine whether it was necessarily concluded by appellants' failure to plead the issue when they had the opportunity.

### III

After reviewing the mortgage and the underlying contract, the trial court found that the two were so inextricably intertwined that a determination of the validity of the former would establish the validity of the latter:

**8.** Appellants contend that to the extent that the validity of the mortgage was adjudged without argument, this case is governed by the holding in *Tutt v. Doby, supra* (default judgments cannot be the basis of collateral estoppel). Since that case dealt with a situation in which the party against whom the prior judgment was offered as a bar failed to litigate the prior action at all, we find it inapposite to the present case.

Analysis of the Maryland foreclosure proceedings indicates that it is difficult conceptually to separate the mortgage instrument from the obligation it secures, especially when both have arisen as part of the same transaction. The Maryland Court's ratification of the Auditor's Report specifically addresses amounts owed on the two notes involved here, and the deficiency of the sale price in satisfying those notes. Indeed almost every reference to the mortgage in the pleadings necessarily includes a reference to the underlying debt, beginning with the affidavits of the noteholders which accompany the original pleading filed to initiate the proceedings to foreclose the deed of trust.

The weight of authority supports the conclusion that the mortgage and the debt it secures are inextricably intertwined. Osborne, *Mortgages,* 2d Edition, (1970) § 112, in discussing defenses in a mortgage foreclosure proceeding, states when discussing the defense of fraud that:

> . . . in the law of mortgages securing . . . obligations . . . the mortgage is good or bad to the same extent as is the secured obligation.

See also 55 Am.Jur.2d *Mortgages* § 133 (1971). In short, analysis of the two instruments is benefitted by remembering that the only purpose of the mortgage is to secure the debt. [Footnotes omitted.]

■ From this perspective, one might conclude that the Maryland court implicitly decreed that the contract underlying the mortgage was free from defenses. It did so, however, without benefit of argument on the merits of the fraud claim. The question is thus whether appellants lost the opportunity to present their claim by failing to raise it earlier.[9]

As to the issue of the validity of the mortgage, we know that failure to raise the claim of fraud is fatal. *See* 46 Am.Jur. *Judgments* § 432 (1969). This is particularly true where the prior adjudication "necessarily presupposes certain premises. . ." *Id.* at 592–93. These "principles are universally applied, no matter how much injustice may be done by their application to a particular case." *Id.* at 593 (footnote omitted).

With respect to the defense of fraud in the inducement, it was noted in 50 C.J.S. *Judgments* § 682 (1947):

> Fraud by which defendant was induced to enter into a contract sued on, or otherwise tainting plaintiff's cause of action, is a defense which must be set up when defendant has an opportunity to plead it; if it is not asserted in due time, it will be barred by the judgment, and may not be set up as a defense to a second action, or be made the basis of a subsequent suit by defendant. [Footnote omitted.]

While that statement may be overbroad with regard to barring subsequent suit, res judicata demands that a defense foregone is a defense lost as to the particular claim.

Collateral to the question of the validity of the mortgage, the fraud issue could have been raised in the prior action as a counterclaim and is, in fact, now raised as an independent cause of action. Appellants urge us to take heed of Maryland's permissive counterclaims rule, Md.R.Civ.P. 314, and apply the holding of *Henry v. Gant,* 75 Ind.App. 218, 129 N.E. 408 (1921), to their situation. In that case, the Indiana court applied its permissive counterclaim rule to hold that an action for fraud was not barred by a prior decree for foreclosure on

---

9. Both parties agree, and we accept, that Maryland law applies to determine the issue of the scope of a Maryland foreclosure decree. Appellee has relied heavily on Maryland precedent on this issue. We accept such authority, but we do so only to the extent that such cases conclude that, for the purposes of res judicata, the defense of fraud is lost if it is not raised in the foreclosure action. *Singer v. Steven Kokes, Inc.,* 39 Md.App. 180, 384 A.2d 463 (1978); *Pat*

*Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A.2d 100 (1968); *see Bainder v. Sound Building & Loan Ass'n,* 161 Md. 597, 158 A. 2 (1932). We rely on the law of the District of Columbia, however, to determine whether to approach the broad issue presented by this case as one involving res judicata or collateral estoppel, and, after having determined that the issue involves the latter, we apply the Maryland rules on counterclaims.

a mortgage securing a purchase money note. The trial court, in the present case, discussed two cases from other jurisdictions that reached the opposite result applying a compulsory counterclaim rule. *See Torbit v. Griffith,* 37 Colo.App. 460, 550 P.2d 350 (1976); *Samuels v. Century Federal Savings and Loan Ass'n,* 36 Misc.2d 202, 231 N.Y. S.2d 904 (1962).

Under a compulsory counterclaim rule, the claim of fraud should have been raised in the Maryland action. There is no such rule, however, in Maryland. The trial court maintained that under the Restatement (Second) of Judgments § 56.1(2)(b) (Tent. Draft No. 1, 1973), this counterclaim was compulsory. Section 56.1(2) states:

A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim of:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of Court, or

(b) The relationship between the counterclaim and the plaintiffs' claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

Were the tentative draft of the second restatement the law of Maryland, we would apply it. It is not so however, and thus we can analyze only the Maryland permissive counterclaim rule.

It seems clear that an omitted permissive counterclaim can be raised in a subsequent action. The Supreme Court noted in *Mercoid Corp. v. Mid-Continent Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944):

Though Mercoid were barred in the present case from asserting any defense which might have been interposed in the earlier litigation, it would not follow that its counterclaim for damages would likewise be barred. That claim for damages is more than a defense; it is a separate statutory cause of action. The fact that it might have been asserted as a [permissible] counterclaim in the prior suit . .

does not mean that the failure to do so renders the prior judgment res judicata as respects it. [*Id.* at 671, 64 S.Ct. at 274 (citations omitted).]

No other rule would be logical; barring a permissive counterclaim would, in effect, establish a compulsory counterclaim rule.

### IV

▇ The problem presented by this case is that its resolution is dependent upon the interaction of two distinct concepts of issue preclusion: preclusion by adjudication (collateral estoppel) and preclusion by omission (the counterclaim rules). Were the fraud issue raised and litigated, we would have no problem finding a bar, even in the face of a decree silent on the subject of fraud. Were there a compulsory counterclaim rule in Maryland, finding a bar would be equally simple. But these hypothetical situations are not present here. The trial court, in its thoughtful memorandum order, found that the Maryland decree necessarily concluded the fraud issue. Were we to affirm that decision, we would ignore the fact that appellants made a conscious and open decision, predicated on a liberal counterclaim rule, to avoid litigating the fraud claim in the Maryland court. Although notions of judicial economy might indicate one result, the duty to do justice dictates another.

### V

▇ In relation to the claims against Cowan, our analysis presented above applies to affirm the lower court decision. This situation presents an even clearer case. The claim against Cowan, breach of fiduciary duty, has no connection other than an identity of parties to the Maryland case. Applying the principle that collateral estoppel will not result where "the record of the former trial shows that the verdict could . . . have been rendered without deciding the particular matter," *see Washington, Alexandria and Georgetown Steam Packet Co. v. Sickles,* 72 U.S. (5 Wall.) 580, 18 L.Ed. 550 (1867) (stating the corollary, *i. e.,* collateral estoppel will result where . . the verdict could not have been rendered),

we hold that the claim against Cowan is not barred.[10]

## VI

Finding that collateral estoppel is inapplicable to the facts presented here, we reverse the trial court's decision in No. 13271 and affirm the decision in No. 13876.

*So ordered.*

YEAGLEY, Associate Judge, Retired, dissenting:

I do not agree with the majority's resolution of this case and therefore respectfully dissent. While I endorse several of the legal propositions and quotations in the opinion, as indicated herein, I find them more supportive of an affirmance than of a reversal. For example, my colleagues rely upon and quote from "the landmark case" of *Cromwell v. County of Sac,* 94 U.S. 351, 352–53, 24 L.Ed. 195 (1877). However, as I read it, the following quotation from that opinion seriously undercuts the holding of the majority here:

> Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defences never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

While the foregoing rule would not apply where the second action between the parties is upon a different claim or demand, I do not find that to be the case here. The first action was based on the promissory notes growing out of the sale of real estate seeking foreclosure and a dollar deficiency judgment. The second action attacking the sale as fraudulent in that the property was overpriced, necessarily involved an attack on the validity of the appellants' promise to pay and therefore went to the validity of the notes involved in the foreclosure. I do not believe we should encourage, let alone permit, the separate litigating of these two claims. The claim of fraud in the sale should have been raised in the foreclosure action.

In footnote 9 the majority recognizes that "for the purposes of res judicata, the defense of fraud is lost if it is not raised in the foreclosure action," citing *Singer v. Steven Kokes, Inc.,* 39 Md.App. 180, 384 A.2d 463 (1978); *Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 238 A.2d 100 (1968); and *see Bainder v. Sound Building & Loan Association,* 161 Md. 597, 158 A. 2 (1932).

I also find relevant the majority's quoting as follows from 50 C.J.S. *Judgments* § 682 (1947):

> Fraud by which defendant was induced to enter into a contract sued on, or otherwise tainting plaintiff's cause of action, is a defense which must be set up when defendant has an opportunity to plead it; if it is not asserted in due time, it will be barred by the judgment, and may not be set up as a defense to a second action, or be made the basis of a subsequent suit by defendant. [Footnote omitted.]

However, the majority thereafter concludes, in effect, that such well established law is changed when Maryland's permissive counterclaim rule is applicable. Md.R. Civ.P. 314. They reach that result by apparently assuming that the rule is applica-

---

10. The other issues discussed in Cowan's brief are not before us in this appeal.

ble here and by finding that the rule not only permits the filing of any counterclaim, but that it also grants to a defendant who chooses not to raise his defense against a plaintiff the right to raise it separately as the basis of an independent cause of action even though, as here, it would have been a good defense to the original cause of action.

My colleagues cite as authority for their conclusion that "an omitted permissive counterclaim can be raised in a subsequent action," the case of *Mercoid Corp. v. Mid-Continent Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944). The majority quotes the Supreme Court in that case as follows:

> Though Mercoid were barred in the present case from asserting any defense which might have been interposed in the earlier litigation, it would not follow that its counterclaim for damages would likewise be barred. That claim for damages is more than a defense; it is a separate statutory cause of action. The fact that it might have been asserted as a [permissible] counterclaim in the prior suit . . does not mean that the failure to do so renders the prior judgment *res judicata* as respects it. [*Id.* at 671, 64 S.Ct. at 274 (citations omitted).]

I have no problem with that proposition, for it is eminently sound, but quite mistakenly applied to our case. As the Court said, the rule applies when the claim is more than a defense and constitutes a separate cause of action. The *Mid-Continent* complaint was for patent infringement. The counterclaim by *Mercoid* referred to by the Supreme Court was for damages flowing from the misuse of the patent in violation of the antitrust laws, clearly an unrelated and separate cause of action that had nothing to do with whether Mercoid was guilty of infringement, but nonetheless a claim that could have been the basis of a counterclaim in earlier infringement litigation.

Because it was a separate cause of action, the Court held that Mercoid was not bound to raise it in the earlier action and that it

was not now barred. That is not our situation and *Mercoid* is not authority to support the turning point in the majority opinion.

The Maryland permissive counterclaim rule does not justify the application of the *Mercoid* decision to our facts. That rule was never intended to apply to defenses or claims which a defendant already had a right to file. Rather, its purpose was to authorize the raising of claims of a defendant against a plaintiff that were unrelated to plaintiff's cause of action and which, without the rule, could not be the subject of a counterclaim. These would be independent claims or causes of action growing out of a different transaction.[1] There could be no other reason for the rule. It was aimed at inviting a consolidation of actions between the same parties in the interest of judicial economy. However, the majority's enlargement of the rule and invoking it here runs counter to the aim of judicial economy by permitting separate trials of claims that should be litigated in one suit. It invites one who has a counterclaim, even if it grew out of the same transaction, to withhold it in favor of a separate cause of action in a forum of the claimant's choice.

The rule contains no language whatever granting permission not to file any particular counterclaim and it most certainly says nothing about permission not to file a defense or claim that grew out of and was an integral part of the same transaction upon which appellant was originally sued. The rule simply authorizes the filing as a counterclaim of any separate or independent claim that would not have been permissible before the rule, since defenses and related claims already could be asserted by counterclaim before this rule was adopted. Without the rule, separate and unrelated causes of action between the parties could not be resolved in one trial. That is all that the rule sought to accomplish.

I agree with the trial court that the permissive counterclaim rule has no bearing on this case and that plaintiffs-appellants here

---

1. *World Wide Imported Car Co., Ltd. v. Savings Bank of Baltimore,* 41 Md.App. 263, 396 A.2d 547 (1979).

should have asserted the fraud as a defense to the foreclosure action.[2] The grounds asserted in the complaint here would have been a good defense to the foreclosure action. Furthermore, the evidence necessary to prove the allegations would have justified a judgment favorable to them in the foreclosure action.[3] Having failed to do so, they are barred from raising it here as a separate cause of action. Although I would be perfectly willing to adopt or endorse the well reasoned opinion of the trial court, I would prefer predicating our ruling on direct, rather than collateral, estoppel.[4]

For the foregoing reasons, it seems to me we should affirm the judgment of the trial court dismissing the complaint.

I have no disagreement with the opinion of this court as to the claim in No. 13876, which involves a separate cause of action against one of the partners of the appellants for breach of fiduciary duty, which the trial court did not dismiss.

**2.** *See generally World Wide Imported Car Co., Ltd. v. Savings Bank of Baltimore, supra; cf. Klein v. Whitehead,* 40 Md.App. 1, 389 A.2d 374 (1978).

**3.** *Klein v. Whitehead, supra.*

**4.** *World Wide v. Savings Bank of Baltimore, supra.*